IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES ex rel. MICHAEL BRENT (#B-04680), | ) ) ) | |
| Petitioner, | ) ) | Case No. 06 C 3817 |
| v. | ) ) | |
| EDDIE JONES, Acting Warden, Pontiac Correctional Center, | ) ) ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is pro se Petitioner Michael Brent's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1). For the following reasons, the Court denies Brent's habeas petition.

## BACKGROUND

Brent does not present clear and convincing evidence challenging the statement of facts set forth in the Illinois Appellate Court's opinions affirming the judgments of the Circuit Court of Cook County, and thus the Court presumes those facts are correct for purposes of its habeas review. *See* 28 U.S.C. § 2254(e)(1); *see also Virsnieks v. Smith,* 521 F.3d 707, 714 (7th Cir. 2008). The Court thus adopts the underlying facts as set forth by the Illinois Appellate Court in *People v. Brent*, 1-04-0805 (Ill.App.Ct. Oct. 1, 2004) (unpublished); *People v. Brent,* 1-00-3478 & 1-01-0913 (consolidated) (Ill.App.Ct. May 2, 2003) (unpublished). The Court begins with a brief recounting of the facts as determined by the Illinois Appellate Court. *See Easley v. Frey,* 433 F.3d 969, 970 (7th Cir. 2006).

## I.     Factual Background

Following simultaneous jury trials in the Circuit Court of Cook County, Petitioner

Michael Brent and his co-defendant, Victor Reynolds, were convicted of the first degree murder

of Carlos Sanchez.  (R. 16-1, Resp.'s Rule 5 Exs., Ex. D, L.)  At trial, testimony revealed that

Reynolds was driving a car in which Brent was a passenger and that Brent and Reynolds were in

a car accident with Sanchez and two other occupants of a Chevrolet Blazer.  After the accident,

Brent told the police that Reynolds pursued the Blazer for about 15 to 20 minutes claiming that

he would "beat their ass."  Brent also said that during the chase, he instructed Reynolds where to

turn while following the Blazer.

After the Blazer crashed into a pole, Sanchez and the two other occupants of the Blazer

fled.  Reynolds and Brent pursued them on foot.  Upon exiting the car, Brent carried a baseball

bat after which he walked around a house and saw Sanchez emerge from hiding.  Thereafter,

Sanchez attempted to climb a fence, but Brent grabbed Sanchez's jacket, punched him, and

pushed him over the fence.  Reynolds then approached Sanchez and began hitting him with a

"Club" anti-theft device.  Sanchez ran away, but Reynolds pursued him and continued to strike

him with the Club anti-theft device.  Consequently, Sanchez died of multiple blunt force injuries.

## II.     Procedural Background

After a jury convicted Brent of first degree murder based on the legal theory of

accountability, the trial court sentenced him to 25 years in prison.  Brent appealed his conviction

and sentence to the Illinois Appellate Court, First District, where he raised the following claims:

(1) the Circuit Court erred in limiting the cross-examination and impeachment of eyewitness

Wardell Trotter in violation of his Sixth Amendment right to present a defense; (2) the Circuit

Court erred by refusing to instruct the jury on the lesser-included offenses of battery, aggravated battery, and second degree murder; (3) the Circuit Court erred in allowing the State to introduce evidence of two exhibits marked by an individual who testified only before Reynolds' jury; and (4) Brent was denied a fair trial when the State, in its closing argument, improperly misstated the evidence, gave a misleading example of legal responsibility, indicated a change in its theory of the case, improperly stated the prosecutor's opinion, and sought to inflame the passions of the jury. (Ex. A.) On May 2, 2003, the Illinois Appellate Court affirmed Brent's conviction and sentence. (Ex. D.) Brent then filed a petition for leave to appeal ("PLA") to the Supreme Court of Illinois raising the same issues that he raised on direct appeal. (Ex. E.) The Supreme Court of Illinois denied Brent's PLA on January 28, 2004. (Ex. F.)

Meanwhile, on September 23, 2003, Brent filed a petition for post-conviction relief in the Circuit Court of Cook County pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122–1, *et seq.* (Ex. G.) Brent raised the following claims in his post-conviction petition: (1) the State failed to prove him guilty of every element necessary to sustain a conviction of accountability; (2) he cannot be held accountable because he stopped assisting his co-defendant Reynolds before the commission of the offense; (3) trial counsel failed to request that a withdrawal instruction be submitted to the jury; and (4) appellate counsel was ineffective for failing to raise claims one, two, and three on direct appeal. (*Id.*) The Circuit Court dismissed Brent's post-conviction petition. (Ex. H.) Brent then appealed the Circuit Court's dismissal to the Illinois Appellate Court, First District. (Ex. I.) In his post-conviction appeal, Brent raised the following claims: (1) his appellate counsel was ineffective for failing to raise the issue of reasonable doubt on the ground that the State's evidence negated his accountability for first

degree murder; and (2) appellate counsel was ineffective for failing to argue that trial counsel should have requested that the jury be instructed on withdrawal. (*Id.*) The Illinois Appellate Court affirmed the Circuit Court's dismissal of the post-conviction petition on December 9, 2005. (Ex. L.) Brent then filed a PLA to the Supreme Court of Illinois raising two claims: (1) although withdrawal was the only legally supportable defense, the Illinois Appellate Court wrongly held that trial counsel's failure to request a withdrawal instruction was "objectively reasonable given the arguments presented at trial," ignoring the fact that trial counsel's strategy – which focused on general lack of accountability – was doomed to fail and thus not objectively reasonable and (2) appellate counsel's failure to raise the issue that trial counsel was ineffective for failing to request a jury instruction on withdrawal constituted ineffective assistance of appellate counsel. (Ex. M.) The Supreme Court of Illinois denied Brent's post-conviction PLA on May 24, 2006. (Ex. N.)

On June 27, 2006, Brent filed the present pro se petition for a writ of habeas corpus raising these claims: (1) the Circuit Court erred in limiting the cross-examination and impeachment of witness Wardell Trotter in violation of his Sixth Amendment right to present a defense; (2) the Circuit Court erred by not instructing the jury on the lesser-included offenses of battery, aggravated battery, and second-degree murder; (3) the Circuit Court erred in allowing the State to introduce two exhibits marked by a witness who testified before co-defendant Reynold's jury, but not his jury; (4) the State's closing argument constituted prosecutorial misconduct; (5) the cumulative effect of the errors set forth in the prosecutorial misconduct claim denied Brent a fair trial; and (6) appellate counsel was constitutionally ineffective for failing to raise trial counsel's error concerning the jury instruction on withdrawal.

<u>**LEGAL STANDARDS**</u>

**I.      Habeas Standard**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas

relief cannot be granted unless the state court's decision was contrary to, or an unreasonable

application of federal law clearly established by the Supreme Court.  *See Williams v. Taylor,* 529

U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Calloway v. Montgomery,* 512 F.3d

940, 943 (7th Cir. 2008).  In *Williams*, the Supreme Court explained that a state court's decision

is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion

opposite to that reached by this Court on a question of law" or "if the state court confronts facts

that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a

result opposite to ours."  *Id.* at 405.

Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner

must demonstrate that although the state court identified the correct legal rule, it unreasonably

applied the controlling law to the facts of the case.  *See id.* at 407.  "This reasonableness

determination is quite deferential, such that a state decision may stand as long as it is objectively

reasonable, even if the reviewing court determines it to be substantively incorrect."  *Barrow v.*

*Uchtman*, 398 F.3d 597, 602 (7th Cir. 2005); *see also Williams*, 529 U.S. at 410 (an

***unreasonable*** application of federal law is different from an ***incorrect*** application of federal law)

(emphasis in original).  To be considered objectively unreasonable, a state court's decision must

lie "well outside the boundaries of permissible differences of opinion."  *Gilbert v. Merchant,* 488

F.3d 780, 790 (7th Cir. 2007) (quoting *Hardaway v. Young,* 302 F.3d 757, 762 (7th Cir. 2002)).

Put differently, to be reasonable, a state court's decision must be "at least minimally consistent

with the facts and circumstances of the case." *Simpson v. Battaglia,* 458 F.3d 585, 592 (7th Cir. 2006) (citations omitted).

## II.     Procedural Default

Before bringing a habeas claim in federal court, a petitioner must exhaust all remedies available to him in state court. *Lieberman v. Thomas,* 505 F.3d 665, 669 (7th Cir. 2007). More specifically, a habeas petitioner must fully and fairly present his federal claims to the state courts before he files his federal habeas petition. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Johnson v. Loftus,* 518 F.3d 453, 455 (7th Cir. 2008). Moreover, a "habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Lewis v. Sternes,* 390 F.3d 1019, 1026 (7th Cir. 2004); *see also Lieberman,* 505 F.3d at 670-71.

A habeas petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice or by showing that the Court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell,* 547 U.S. 518, 536, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006); *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The Supreme Court defines cause sufficient to excuse procedural default as "some objective factor external to the defense" which prevents a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). A fundamental miscarriage of justice occurs when a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496.

<u>**ANALYSIS**</u>

**I.**     **Sixth Amendment Right to Present Defense – Claim 1**

First, Brent maintains that "the trial court erred in limiting both the cross-examination

and attempted impeachment of eyewitness Wardell Trotter, thereby denying [] his Sixth

Amendment right to present a defense." (R. 1-1, Habeas Pet., at 5.)  The clearly established

Supreme Court law that applies to Brent's Sixth Amendment right to present a defense claim is

set forth in *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).  *See*

*Horton v. Litscher,* 427 F.3d 498, 504 (7th Cir. 2005).  In *Horton*, the Seventh Circuit articulated

that "the Supreme Court has held unconstitutional the rigid application of state evidentiary rules

when such an application infringes upon the right to present witnesses in one's own defense,

particularly when that testimony is critical to the defense's theory of the case." *Id.* at 504 (citing

*Chambers,* 410 U.S. at 302-03).  The *Horton* court further explained:

> This right, however, is not unlimited and may "bow to accommodate other
> legitimate interests in the criminal trial process."  The state is permitted to impose
> reasonable restrictions on the presentation of a defense, including state and
> federal rules "designed to assure both fairness and reliability in the ascertainment
> of guilt and innocence."  Such rules do not abridge an accused's right to present a
> defense so long as they are not arbitrary or disproportionate to the purposes they
> are designed to serve.

*Id.* at 504-05 (quoting *Chambers*, 410 U.S. at 295, 302) (other internal citations and quotations

omitted).  In short, a trial court's exclusion of evidence in a criminal matter only abridges a

defendant's Sixth Amendment right to present a defense if the exclusion is arbitrary or

disproportionate to the evidentiary rule's purpose.  *See Malinowski v. Smith,* 509 F.3d 328, 335

(7th Cir. 2007); *Horton*, 427 F.3d at 505.  The Supreme Court has further instructed that "the

exclusion of evidence [is] unconstitutionally arbitrary or disproportionate only where it has

infringed upon a weighty interest of the accused." *United States v. Scheffer,* 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998).

Brent's habeas claim regarding Trotter's cross-examination and impeachment refers to the following testimony:

> MS. COLLINS [defense counsel]: Did you ever see the short man [Brent] hit the man on the ground?
>
> MR. TROTTER: No.
>
> Q: Did you ever see anything in the short man's hands?
>
> A: No.
>
> Q: Did you ever hear the short man telling the taller man to continue beating the man?
>
> MR. ROBERTSON [assistant state's attorney]: Objection, your Honor. Calls for a hearsay response.
>
> THE COURT: Objection is sustained.
>
> MS. COLLINS: Did you ever hear the short man try and encourage the taller man?
>
> A: No.

*People v. Brent,* 1-00-3478 & 1-01-0913, at 23 (consolidated) (Ill.App.Ct. May 2, 2003).

In addressing the claim concerning Trotter's testimony, the Illinois Appellate Court stated the following:

> Although Brent argues that he attempted to introduce Trotter's testimony as to "the absence of any conduct" that Brent agreed with or encouraged Reynolds, Brent's counsel asked Trotter what he heard Brent say. The questions sought to elicit Trotter's testimony of statements that Brent made to Reynolds. The prosecutor did not have to wait to hear Trotter's answers to raise a hearsay objection based on the questions posed. Therefore, the State's objections were properly sustained.

Brent also argues that Trotter's testimony should have been admitted as evidence of Brent's state of mind.... Trotter did not testify as to any statement that would reveal Brent's state of mind. Instead, Trotter testified that he did not hear Brent speak to Reynolds. Despite Brent's argument that he was prevented from establishing a defense, the jury heard Trotter testify that while Reynolds was striking Sanchez, Brent was doing "nothing" and that Brent tried to convince Reynolds to leave.... We therefore reject Brent's arguments on those evidentiary rulings.

Brent also contends that the trial court improperly limited his attempted impeachment of Trotter. After Trotter stated on cross-examination that he did not see Brent and Reynolds leave and return to the lot, Brent's counsel tried to impeach Trotter by asking if he told police after the incident that Reynolds and Brent walked a short distance down the street and Reynolds returned.... Nevertheless, at the close of Brent's case, the parties stipulated that a police detective who interviewed Trotter shortly after the incident would testify that Trotter told him that the two men walked down the street and that Reynolds returned. The jury therefore heard Trotter's prior inconsistent statement. We find no prejudicial error.

*People v. Brent,* 1-00-3478 & 1-01-0913, at 25-26 (consolidated) (Ill.App.Ct. May 2, 2003)

(internal citations omitted).

The Illinois Appellate Court's conclusion is not contrary to or an unreasonable

application of *Chambers.*[1] *See* 28 U.S.C. § 2254(d)(1). Specifically, the Illinois Appellate Court

concluded that the trial court's evidentiary rulings concerning Trotter's cross-examination and

impeachment were not erroneous or prejudicial. Moreover, the Illinois Appellate Court

concluded that Brent's claim that he was prevented from establishing a defense failed because

the jury heard Trotter testify that while Reynolds was striking the victim, Brent did not

participate and tried to convince Reynolds to leave. Also, because the parties stipulated that a

---

[1] Although the Illinois Appellate Court did not discuss *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), under the AEDPA, the state court need not cite nor be aware of the relevant Supreme Court precedent "so long as neither the reasoning nor the result of the state-court decision contradicts" established Supreme Court precedent. *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); *Daniels v. Knight,* 476 F.3d 426, 434 (7th Cir. 2007).

police detective who interviewed Trotter shortly after the incident would testify that Trotter told

him that the two men walked down the street and that Reynolds returned, Brent was not

prejudiced by the trial court's limitation of his attempt to impeach Trotter.  Accordingly, the

Illinois Appellate Courts' application of Illinois' evidentiary rules was not unconstitutionally

rigid nor did the court's rulings prevent Brent from presenting a defense, especially in light of

Trotter's testimony supporting Brent's "absence of conduct" defense.  Therefore, the Illinois

Appellate Court's decision does not lie "well outside the boundaries of permissible differences

of opinion" and is "minimally consistent with the facts and circumstances of this case."  *See*

*Gilbert,* 488 F.3d at 790; *Simpson,* 458 F.3d at 592.  As such, Brent has failed in his burden of

demonstrating that the Illinois Appellate Court's decision was objectively unreasonable.  *See*

*Woodford v. Visciotti,* 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).

## II.      Non-Cognizable Claims – Claims 2 & 3

Next, Brent brings two claims in his habeas petition that are not cognizable on habeas

review.  "In conducting habeas review, a federal court is limited to deciding whether a

conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire,*

502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).  As such, state law errors

concerning state law issues are generally not cognizable on habeas review.  *See id.* ("it is not the

province of a federal habeas court to reexamine state-court determinations on state-law

questions"); *see also Perruquet v. Briley,* 390 F.3d 505, 511 (7th Cir. 2004) ("errors of state law

in and of themselves are not cognizable on habeas review").  More specifically, the "remedial

power of a federal habeas court is limited to violations of the petitioner's federal rights, so only

if a state court's errors have deprived the petitioner of a right under federal law can the federal

court intervene." *Perruquet,* 390 F.3d at 511.

### A.    Jury Instructions on Lesser-Included Offenses – Claim 2

In his second habeas claim, Brent maintains that the trial court erred in refusing to instruct the jury on the lesser included offenses of battery, aggravated battery, and second-degree murder. "In general, the failure of a state trial court to instruct the jury on a lesser offense does not implicate a federal constitutional question and will not be considered in a federal habeas corpus proceeding." *Reeves v. Battles,* 272 F.3d 918, 920 (7th Cir. 2001); *see also Gilmore v. Taylor,* 508 U.S. 333, 344, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993) ("instructional errors of state law generally may not form the basis for federal habeas relief."). "In a habeas action, the question is not whether the failure to instruct on a lesser included offense was correct or incorrect under state law, but rather whether failure to do so constituted a defect so fundamental that it results in a complete miscarriage of justice or omission inconsistent with the standards of fair procedure." *Reeves,* 272 F.3d at 920. In other words, to be cognizable on habeas review, a petitioner must argue that the state court's failure to instruct the jury of a lesser included offense resulted in a conviction that violated his right to due process. *See id.*

In his habeas petition, Brent fails to make any such argument, namely, that his due process rights were implicated by the state court's alleged errors. Although Brent mentions the egregiousness of the state court's alleged errors in his reply brief, Brent's undeveloped argument raised for the first time in his reply brief is waived. *See Amerson v. Farrey,* 492 F.3d 848, 852 (7th Cir. 2007) (arguments made for first time in reply are waived); *see also Hardrick v. City of Bolingbrook,* 522 F.3d 758, 762 (7th Cir. 2008) (perfunctory and undeveloped arguments are waived). Moreover, Brent did not raise any such due process argument to the Illinois Appellate

Court, and thus this claim is also procedurally defaulted, *see Johnson,* 518 F.3d at 455, and Brent

offers no explanation excepting this procedural default. *See Coleman,* 501 U.S. at 750.

Therefore, Brent's habeas claim based on the state court's failure to instruct the jury on lesser

included offenses fails because it is not cognizable on habeas review and is also procedurally

defaulted.

### B.    Trial Exhibits – Claim 3

In his third habeas claim, Brent argues that the trial court erred in allowing the State to

introduce evidence of two exhibits marked by an individual who testified before his co-

defendant's jury, but not his jury. The state court's evidentiary rulings concerning the two

exhibits at issue do not comprise a cognizable habeas claim because this alleged state court error

does not implicate Brent's constitutional rights. *See Perruquet,* 390 F.3d at 511. In other words,

Brent does not make a sufficient connection between the evidentiary rulings concerning these

two exhibits and the denial of a constitutional or federal right, such as his due process right to a

fair trial. *See id.* at 510 ("Due process does entitle a defendant to a fair trial; but only if the state

court committed an error so serious as to render it likely that an innocent person was convicted

can the error be described as a deprivation of due process."). Because Brent's argument based

on the state court's admission of these exhibits is not a cognizable habeas claim, the Court

cannot determine the merits of this claim on collateral review. *See Estelle*, 502 U.S. at 71 ("Due

Process Clause does not permit the federal courts to engage in a finely tuned review of the

wisdom of state evidentiary rules") (citation omitted). Hence, Brent's third habeas claim fails.

### III.    Prosecutorial Misconduct – Claims 4 & 5

In his next habeas claim, Brent brings a prosecutorial misconduct claim based on the

State's closing argument at his jury trial. Specifically, Brent maintains that in closing, the State misstated evidence, gave a misleading example of legal responsibility, indicated a change in its theory of the case, improperly stated the prosecutor's opinion, and improperly sought to inflame the passions of the jury. Brent also argued to the Illinois Appellate Court that "[i]ndividually and cumulatively, the improper comments made during closing argument denied [him] a fair trial."[2] (Ex. A., *People v. Brent,* 1-00-3478, Def. Brief, at 42.)

In evaluating a claim of prosecutorial misconduct, the relevant inquiry is whether the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). As *Darden* teaches, when reviewing a claim of prosecutorial misconduct, courts must determine whether the prosecutor's statements were improper and if the defendant was prejudiced. *See United States v. Corley,* 519 F.3d 716, 727 (7th Cir. 2008); *Bartlett v. Battaglia,* 453 F.3d 796, 802 (7th Cir. 2006). In determining prejudice, courts must examine a number of factors, including: "(1) whether the prosecutor misstated the evidence; (2) whether the remark implicated a specific right; (3) whether the defendant invited the response; (4) the efficacy of curative instructions; (5) the defendant's opportunity to rebut; and (6) the weight of the evidence." *Corley,* 519 F.3d at 727; *see also Darden,* 477 U.S. at 181-92.

In addressing Brent's prosecutorial misconduct claim on direct appeal, the Illinois

---

[2] Although Brent brings a separate habeas claim based on the cumulative effect of the alleged prosecutorial errors, on direct appeal he made his cumulative effect argument in the context of his prosecutorial misconduct claim. The Court thus analyzes Brent's fourth and fifth habeas claims as he presented them to the state court on direct appeal. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (habeas petitioner must fully and fairly present federal claims to state courts before he files federal habeas petition).

Appellate Court reasoned:

We first address Brent's assertions that the prosecutor misstated the evidence and injected his personal opinion into closing argument. Brent argues that the prosecutor misstated the evidence by saying Brent carried a baseball bat when he got out of Reynolds' car and that the baseball bat caused some of Sanchez's injuries. Brent contends that the argument was improper because the evidence did not show that the bat was used to strike Sanchez. Reviewing the argument as a whole, we note that the prosecutor further commented to the jury that he did not claim that Brent used the bat to hit Sanchez but was instead repeating the medical examiner's testimony that Sanchez's injuries were consistent with being struck by a blunt instrument. The comments were based on the evidence presented at trial; furthermore, we do not find the remarks prejudicial considering Brent was not charged with killing Sanchez himself but was instead tried on an accountability theory. As to the additional complained-of comments, we note that several of them were based on the evidence and that the trial court sustained defense counsel's objections and instructed the jury to consider only statements supported by the evidence, two steps that can lessen any potential prejudicial effect.

Brent also argues that the prosecution offered the jury a misleading example of legal responsibility. In discussing the concept of accountability, the prosecutor stated:

MR. ROBERTSON [assistant state's attorney]: Let's talk about this in a legal fashion. Let's take the offense of armed robbery. Okay. You have two people planning an armed robbery. One is the getaway driver –

MR. COLLINS [Brent's counsel]: Objection, Judge.

THE COURT: Objection will be sustained as to that.

MR. ROBERTSON: Let's take the example of someone building a bomb. Three people decide to build a bomb. Person A just builds the bomb.

MR. COLLINS: Objection, Judge.

THE COURT: I'll let him proceed.

MR. ROBERTSON: Person B transports the bomb. Person C arms the bomb. [Person] A cannot claim that he [is] not responsible saying listen, I only built the bomb. I never took it to where it was

set to go off and I never armed it. Person B can't make the same claim saying hey, I only transported it. I never built it, I never armed it. That's what the law of legal responsibility recognizes. That's when you're in for a penny you're in for a pound.

Brent contends that the "bomb" example misled the jury because it involved three people and because a bomb's only purpose is to explode and because unlike a bomb, a Club device and baseball bat have legal purposes. We do not find the prosecutor's attempt to illustrate the theory of accountability misleading or inaccurate. Brent also argues that the prosecutor improperly suggested that Brent had a duty to help Sanchez. In reviewing the context of the State's arguments, we note that the prosecutor further explained that Brent did not have an obligation to help Sanchez but that the jury should consider Brent's actions in their entirety. Moreover, the prosecutor's additional statements regarding accountability were based on the evidence.

Brent argues that several comments were made to incite the jury's prejudice. Prosecutors may not engage in inflammatory arguments solely designed to arouse the passions of the jury. Again, in assessing such remarks, closing arguments must be viewed in their entirety and in context. Brent argues that the jury was prejudiced by several statements, including the prosecutor's reference to the "last moments" of Sanchez's life, his reference to Reynolds and Brent as a "wonderful tag team," his mention of an award for the "road rage murder of the year," his reference to the fact that Sanchez drove a stolen car, and his argument that Brent was Reynolds' friend and that he failed to help Sanchez. As to the latter two assertions, the prosecutor's statements were supported by the evidence. We do not find the remaining comments could have played a role in the jury's decision in light of the evidence against Brent. His final contention is that the numerous improper remarks necessarily influenced the jury because the jury heard no evidence of any physical act by Brent against Sanchez. However, physical activity is not a necessary element of accountability.

*People v. Brent,* 1-00-3478 & 1-01-0913, at 29-31 (citations omitted).

The Illinois Appellate Court's decision is not contrary to or an unreasonable application

of *Darden*.[3]  *See* 28 U.S.C. § 2254(d)(1). The Illinois Appellate Court concluded that several

---

[3] The Illinois Appellate Court did not cite to the clearly established Supreme Court authority set forth in *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). Under the AEDPA, the state court need not cite nor be aware of Supreme Court precedent "so long as neither the reasoning nor the result of the state-court decision contradicts" established Supreme Court precedent. *See Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154

comments in closing were not improper, and the remaining comments, even if improper, were not prejudicial. Also, the trial court properly instructed the jury regarding the significance of closing statements. *See Laxton v. Bartow,* 421 F.3d 565, 573 (7th Cir. 2005) (courts presume that jurors follow jury instructions).

Moreover, the Illinois Appellate Court's conclusion that the prosecutor's "bomb" example was not prejudicial was objectively reasonable because the prosecutor further explained the theory of accountability based on evidence presented at trial. *See Corley,* 519 F.33 at 727 (when reviewing prosecutorial misconduct claims, courts determine whether statements were improper *and* prejudicial). As far as the prosecutor's comments allegedly made to incite the jury, the Illinois Appellate Court reasonably concluded that these statements were not prejudicial in light of the evidence presented against Brent. *See id.* (weight of evidence factor in considering prejudice under *Darden*); *see also Bartlett,* 453 F.3d at 803 (same). As such, the Illinois Appellate Court's decision does not lie "well outside the boundaries of permissible differences of opinion" and is "minimally consistent with the facts and circumstances of this case." *See Gilbert,* 488 F.3d at 790; *Simpson,* 458 F.3d at 592. Based on the Illinois Appellate Court's reasonable application of *Darden,* Brent has failed in his burden of establishing that the state court's decision was an objectively unreasonable application of Supreme Court precedent. *See Woodford,* 537 U.S. at 24-25. The Court thus denies Brent's prosecutorial misconduct claim.

## IV. Ineffective Assistance of Appellate Counsel – Claim 6

Finally, in his last habeas claim, Brent maintains that his appellate counsel was

---

L.Ed.2d 263 (2002).

constitutionally ineffective for failing to argue that trial counsel should have requested a jury instruction on withdrawal. The clearly established Supreme Court law that applies to Brent's ineffective assistance of appellate counsel claim is set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish constitutionally ineffective assistance of counsel, Brent must show that (1) his attorneys' performance "fell below an objective standard of reasonableness," *id.* at 688, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors the result of the proceeding would have been different." *Id.* at 694 ("a reasonable probability is a probability sufficient to undermine confidence in the outcome"); *Suggs v. United States,* 513 F.3d 675, 678 (7th Cir. 2008). If Brent fails to make a proper showing under one of the *Strickland* prongs, the Court need not consider the other. *See Strickland,* 466 U.S. at 697; *Amerson,* 492 F.3d at 851.

In the context of ineffective assistance of appellate counsel claims, an appellate counsel's performance is constitutionally deficient if counsel fails to appeal an issue that is obvious and clearly stronger than the claims counsel did raise. *See Suggs,* 513 F.3d at 678; *Sanders v. Cotton,* 398 F.3d 572, 585 (7th Cir. 2005). To establish the *Strickland* prejudice prong, Brent must show that there is a reasonable probability that appellate counsel's failure to raise an issue would have resulted in the reversal of his conviction or an order for a new trial. *See Lee v. Davis,* 328 F.3d 896, 901 (7th Cir. 2003).

In addressing Brent's ineffective assistance of appellate counsel claim, the post-conviction Illinois Appellate Court stated:

> A defendant is entitled to have the jury instructed on any defense supported by the evidence. As the State points out, a determination of what jury instructions to tender is widely regarded as a matter of trial strategy, which is typically immune from an ineffective assistance claim.

17

Defendant argues that although a theory of withdrawal from the attack on Sanchez was not properly communicated to the jury, withdrawal was the "heart" of his defense and represented his "best chance" for acquittal. However, the record contradicts defendant's claim that the centerpiece of his defense strategy was that he initially was accountable for Reynolds' acts but withdrew from the fatal beating.

In opening statement, defense counsel argued that Reynolds bore sole responsibility for the attack:

> Michael Brent did not beat Carlos Sanchez with a club on at least two occasions. Michael Brent did not jump up and down on Carlos Sanchez. And therefore Michael Brent is not legally responsible, he is not accountable, he is not liable for what Victor Reynolds did to Carlos Sanchez.

Defendant's counsel did not assert that defendant participated in the attack on Sanchez along with Reynolds (and was accountable) but that he then withdrew from the situation, thus negating his culpability. Counsel instead argued that although defendant punched Sanchez and pushed him over the fence, he was not responsible for Reynolds' subsequent act of fatally striking Sanchez with the Club device.

Counsel argued that Reynolds was "out of control and working on his own" and that defendant had "nothing left to do with him." Defense counsel contended that Reynolds was solely culpable for Sanchez's death. In closing argument, defense counsel stated, "You never heard anything in this trial about [defendant] ever encouraging, helping or aiding Victor Reynolds in the vicious acts that he took upon himself to do." Counsel therefore argued that defendant was not accountable for Reynolds' actions. Counsel's decision not to request an instruction on withdrawal was objectively reasonable given the arguments presented at trial.

Even if defense counsel had chosen to present a withdrawal theory and the jury had received that instruction, the result of defendant's trial would not have differed. Although defendant contends that he tried to pull Reynolds away from Sanchez and pleaded with Reynolds to stop the attack, we have concluded above that even in light of that testimony, the evidence was sufficient to support defendant's conviction.

Defendant contends that two questions from the jury during its deliberations reflect its conflict about convicting him under the facts presented. The jury asked: "Do we have to find him [sic] first degree murder because he's legally responsible?" and "Could we find him legally responsible but not first

degree murder?"  The court, with agreement from the prosecution and the defense, instructed the jury to continue deliberating.

Defendant asserts that without an instruction on withdrawal from the offense, the jury's only option was to convict him on an accountability theory. Defense counsel argued that defendant was not accountable for Reynolds' actions, and the jury was instructed on the necessary proof for that theory.  The fact that a defense was unsuccessful or that another attorney would have proceeded differently with the benefit of hindsight does not establish that trial counsel was ineffective.  Furthermore, appellate counsel is not ineffective for failing to raise an issue that lacks merit.

*People v. Brent*, 1-04-0805, at 9-11 (Ill.App.Ct. Oct. 1, 2004) (unpublished) (citations omitted).

First, the Illinois Appellate Court properly identified the relevant, clearly established Supreme Court authority, *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  *See People v. Brent*, 1-04-0805, at 4-5.  Second, the Illinois Appellate Court reasonably applied *Strickland* to the facts of this case.  *See Gilbert,* 488 F.3d at 790; *Simpson,* 458 F.3d at 592.  Specifically, the Illinois Appellate Court concluded that trial counsel's performance was not deficient because the defense of Brent's lack of accountability was a reasonable trial strategy based on the evidence in this matter and that failing to tender a withdrawal instruction was not ineffective assistance of counsel based on the lack of evidence supporting this theory.  *See Johnson v. Loftus,* 518 F.3d 453, 457 (7th Cir. 2008) (under *Strickland*, defendant must overcome presumption that counsel's conduct was sound trial strategy).  The Illinois court also reasoned that Brent was not prejudiced by counsel's trial strategy in light of the evidence supporting Brent's conviction.  The Illinois Appellate Court then concluded that appellate counsel was not constitutionally ineffective for failing to raise an issue that lacked merit.

Indeed, it is questionable whether the defense of withdrawal was available to Brent under

the circumstances.  The applicable Illinois statute states that a person is not accountable if:

> **Before the commission of the offense**, he terminates his effort to promote or facilitate such commission, and does one of the following: wholly deprives his prior efforts of effectiveness in such commission, or gives timely warning to the proper law enforcement authorities, or otherwise makes proper effort to prevent the commission of the offense.

720 ILCS 5/5-2(c)(3) (emphasis added).  The facts set forth by the Illinois Appellate Court reveal that the commission of a crime began when Reynolds started chasing Sanchez's car and Brent helped navigate the chase.  Thereafter, Brent punched Sanchez and pushed him over a fence after which Reynolds hit Sanchez with the Club anti-theft device resulting in Sanchez's death.  As the Illinois Appellate Court explains, in order to withdraw from a criminal enterprise, the accused must "effectively detach[] himself from the criminal enterprise before the crime is in the process of consummation or has become so inevitable that it cannot reasonably be stayed." *See People v. Gilbert,* 194 Ill.App.3d 184, 189, 141 Ill.Dec. 137, 550 N.E.2d 1183 (Ill.App.Ct. 1990).  Here, the facts in the record do not necessarily support a withdrawal defense because Brent admits that he did not admonish Reynolds to stop until after Reynolds started beating Sanchez.  (R. 19-1, Pet.'s Reply Brief, at 3.)

Accordingly, even if the defense of withdrawal were available to Brent, Brent has failed to establish that a claim of ineffective assistance of trial counsel based on the defense of withdrawal was an obvious and clearly stronger argument than the claims appellate counsel did raise on direct appeal.  *See Suggs,* 513 F.3d at 678; *Sanders,* 398 F.3d at 585.  In other words, appellate counsel was not ineffective for failing to bring a claim that had little or no merit in comparison with counsel's other arguments on appeal, including the Sixth Amendment claim, the prosecutorial misconduct claim, and the claim based on jury instructions for lesser-included

offenses.  As such, Brent has failed to establish that appellate counsel's performance "fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.  The Court thus denies Brent's final habeas claim.

## **CONCLUSION**

For these reasons, the Court denies Brent's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1).

Dated: August 4, 2008

**ENTERED**

**AMY J. ST. EVE**
**United States District Judge**